UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Kathleen Berthiaume

     v.

Andrew Saul, Commissioner of the
U.S. Social Security Administration

Civil No. 18-cv-557-JL
Opinion No. 2020 DNH 066

## ORDER ON APPEAL

Kathleen Berthiaume has moved to reverse the Social Security Administration's ("SSA") decision to deny her application for a period of disability and disability insurance benefits.[1] An administrative law judge ("ALJ") found that Berthiaume, despite severe impairments, retains the residual functional capacity ("RFC") to perform light exertional work, subject to certain limitations, and thus is not disabled as defined by law. See 20 C.F.R. § 404.1505(a). The Appeals Council affirmed this decision, rendering it final. See id. § 404.981. Berthiaume then appealed to this court, which has jurisdiction under 42 U.S.C. § 405(g) (Social Security). On appeal, Berthiaume asserts that the ALJ erred by giving too much weight to a purportedly outdated medical expert opinion, and that the Appeals Council erred by not reviewing her case in light of new medical-opinion evidence submitted after the ALJ's decision. See L.R. 9.1(b). The SSA Commissioner, in turn, has cross-moved for an order affirming the ALJ's decision.[2] See L.R. 9.1(c).

The court finds that the ALJ's final decision and the Appeal Council's denial of review are both by supported by substantial evidence in the record. It thus denies Berthiaume's motion to reverse and grants the Commissioner's cross-motion to affirm.

---

[1] Berthiaume Mot. to Reverse (doc. no. 9).

[2] Comm'r Mot. to Affirm (doc. no. 12).

I.  **Background**

In June 2017, an ALJ followed the established five-step sequential evaluation process, see 20 C.F.R. § 404.1520, and found that Berthiaume is not disabled under section 216(i) and 223(d) of the Social Security Act.

At Step 1, the ALJ found that Berthiaume had not engaged in substantial gainful activity since her alleged onset date of September 22, 2012.[3]

At Step 2, the ALJ found that Berthiaume had six severe impairments that significantly limited her ability to perform basic work activities—degenerative disc disease, diabetes mellitus, essential hypertension, obesity, a panic disorder, and a major depressive disorder.[4] In doing so, the ALJ declined to find that three other alleged conditions—fibromyalgia, gastroesophageal reflux disorder ("GERD"), and a pseudoseizure disorder—rose to the level of severe impairment or qualified as medically determinable impairments.[5] For fibromyalgia, the ALJ noted that while "[m]ore recent treatment notes reflect[ed] a diagnosis of fibromyalgia," they did "not provide the clinical examinations or medical history sufficient for this condition to qualify as a medically determinable impairment" under Social Security regulations.[6] Nevertheless, the ALJ "fully considered" Berthiaume's reports of pain in "the assessment and the residual functional capacity that follows."[7] And for GERD and pseudoseizure disorder, the ALJ

---

[3] Admin. R. at 30.

[4] Id. at 30 (citing 20 C.F.R. § 404.1520(c)).

[5] Id. at 30-31.

[6] Id. at 30-31.

[7] Id. at 31.

found that the conditions had minimal impact on Berthiaume's ability to engage in work-related activities and thus did not rise to the level of severe impairments.[8]

At Step 3, the ALJ found that Berthiaume's impairments, considered both individually and in combination, did not meet or medically equal the severity criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, including Listings 1.04 (disorders of the spine) and 12.04 (depressive, bipolar, and related disorders).[9] In making a determination for Listing 12.04, the ALJ applied the familiar "Paragraph B" criteria and found that Berthiaume had (1) mild limitations in understanding, remembering, or applying information; (2) mild limitations in interacting with others; (3) moderate limitations in concentrating, persisting, or maintaining pace; and (4) mild limitations in adapting or managing herself.[10]

After considering the entire record, the ALJ ultimately concluded that Berthiaume retains the residual functional capacity to perform light work, subject to additional movement and environmental limitations.[11] In making this finding, the ALJ evaluated the intensity, persistence, and limiting effects of Berthiaume's symptoms, as reflected in Berthiaume's testimony, medical opinion and treatment notes, and other evidence in the record. He also evaluated whether Berthiaume's impairments, either individually or in

---

[8] Id. For pseudoseizure disorder, the ALJ noted that while Berthiaume had been admitted for inpatient treatment, her test results showed no "acute abnormalities consistent with seizures. . . . These episodes ha[d] not been observed during any treatment or office visit," but Berthiaume testified that she had episodes "about 12 times in the previous year." Id. The ALJ found that this "frequency" did not suggest that the disorder "would have more than a minimal effect on her ability" to work. Id.

[9] Id. at 31-32.

[10] Id.

[11] Id. at 32.

combination, rendered Berthiaume unable to do work of any intensity. The ALJ found that although Berthiaume's "medically determinable impairments could reasonably be expected to cause [her] alleged symptoms," Berthiaume's "statements concerning the intensity, persistence[,] and limiting effects of these symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record . . . ."[12]

At Step 4, the ALJ found that Berthiaume has no relevant past work.[13]

At Step 5, the ALJ found, based on the testimony of a vocational expert, that Berthiaume, given her age, education, work experience, and residual functional capacity, can perform jobs that exist in significant numbers in the national economy, including garment sorter, inspector, and price marker.[14] Under this framework, the ALJ concluded that a finding of "not disabled" was appropriate.

Three weeks after the ALJ denied Berthiaume's application, Berthiaume's treating physician completed a 6-page medical questionnaire detailing functional limitations attributable to her fibromyalgia symptoms.[15] Berthiaume then submitted this opinion evidence to the Appeals Council to support a request for review. The Appeals Council denied Berthiaume's request, however, because the questionnaire did "not show a reasonable probability that it would change the [ALJ's] decision."[16]

---

[12] Id. at 33; see also id. at 33-37 (summarizing the subjective and objective medical evidence of record).

[13] Id. at 37.

[14] Id. at 38.

[15] See id. at 8-14.

[16] Id. at 1-2.

4

## II.     **Applicable legal standard**

In reviewing a challenge to a final determination by the SSA, the court "defer[s] to the [presiding ALJ]'s findings of fact, so long as they are supported by substantial evidence." Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000).  As the Supreme Court recently observed, "the threshold for such evidentiary sufficiency is not high."  Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019).  "Substantial evidence . . . is 'more than a mere scintilla.'"  Id. (internal citation omitted).  "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Id. (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).

Though the evidence in the record may support multiple conclusions, the court must still uphold an ALJ's findings "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his [or her] conclusion."  Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991).  "[I]ssues of credibility and the drawing of permissible inference from evidentiary facts are the prime responsibility of the [ALJ]."  Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981) (per curiam).  Reversal is warranted only if the ALJ committed a legal or factual error in evaluating plaintiff's claim, see Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996) (per curiam) (quoting Sullivan v. Hudson, 490 U.S. 877, 885 (1989)), or if the record contains no "evidence rationally adequate . . . to justify the conclusion" of the ALJ.  Roman–Roman v. Comm'r of Soc. Sec., 114 Fed. Appx. 410, 411 (1st Cir. 2004).

"[A]n Appeals Council refusal to review the ALJ may be reviewable where [the Council] gives an egregiously mistaken ground for this action." Mills v. Apfel, 244 F.3d 1, 5 (1st Cir. 2001); Roberson v. Colvin, No. 13-cv-265, 2014 WL 243244, at *3 (D.N.H. Jan. 22, 2014) (DiClerico, J.).  Courts typically "owe such assessments great deference."

5

Mills, 244 F.3d at 6. As such, "when the Appeals Council considers new evidence but concludes that it would not provide a basis for changing the decision, that conclusion is not egregiously mistaken," and must be upheld, "as long as record evidence supports the [Appeals Council's] decision." Roberson, 2014 WL 243244, at *4; see also Shea v. Colvin, No. 12-cv-12420, 2013 WL 5952992, at *10–*11 (D. Mass. Nov. 3, 2013) (Tauro, J.); Thibodeau v. Astrue, No. 09-cv-308, 2009 WL 903851, at *5 n.6 (D.N.H. Mar. 31, 2009) (DiClerico, J.).

### III. Analysis

On appeal, Berthiaume contends that ALJ made two errors, each of which warrants reversal or remand. First, she argues that the ALJ gave too much weight to the purportedly outdated opinion of the state agency physician, Dr. Hugh Fairley, M.D., who opined that Berthiaume had no physical limitations beyond those incorporated into the ALJ's RFC. Second, she asserts that the Appeals Council egregiously erred in denying review after Berthiaume submitted new opinion evidence—a pre-printed medical questionnaire completed by her treating provider, Dr. Laura Fry, M.D.—detailing functional limitations imposed by her fibromyalgia. As discussed below, neither argument persuades the court that the ALJ or the Appeals Council committed an error warranting reversal or remand.

#### A. ALJ's reliance on non-examining physician's opinion

Berthiaume first contends that the ALJ erred by giving substantial weight to the opinion of Dr. Fairley, a state agency physician who opined that Berthiaume's impairments limited her to light work, subject to additional movement and environmental restrictions. Six doctors issued opinions related to Berthiaume's condition, but the ALJ only gave substantial weight to Fairley's. Berthiaume claims this constitutes reversible

6

error because Fairley issued his March 2014 opinion without the benefit of the medical evidence subsequently developed in the three years until the ALJ denied Berthiaume's application in June 2017.  This court disagrees.

Although an ALJ generally may not "rely on an opinion of a non-examining consultant who has not reviewed the full medical record, . . . 'the fact that an opinion was rendered without the benefit of the entire medical record does not, in and of itself, preclude an ALJ from giving [that opinion] significant weight." Wall v. Berryhill, No. 18-cv-277, 2019 WL 2723887, at *4 (D.N.H. June 27, 2019) (Barbadoro, J.) (quoting Meldrem v. Colvin, No. 16-cv-156-JL, 2017 WL 2257337, at *1 (D.N.H. May 23, 2017); see also Alcantara v. Astrue, 257 Fed. Appx. 333, 334 (1st Cir. 2007); Padilla v. Barnhart, 186 Fed. Appx. 19, 21 (1st Cir. 2006); Giandomenico v. U.S. Soc. Sec. Admin., Acting Comm'r, No. 16-cv-506, 2017 WL 5484657, at *4 (D.N.H. Nov. 15, 2017) (Barbadoro, J.).  Incidental changes in a claimant's condition after a consultant has issued a medical opinion do not, by themselves, render an otherwise complete review of the medical record "substantially incomplete."  See Giandomenico, 2017 WL 5484657, at *4; Diggett v. Berryhill, No. 16–233–M, 2017 WL 3705072, at *1 (D.R.I. Aug. 25, 2017) (McConnell, Jr., J.).  An ALJ may rely on a purportedly outdated opinion so long as he or she determines that "the medical evidence postdating the reviewer's assessment does not establish any greater limitations, or [that] the medical reports of claimant's treating providers are arguably consistent with, or at least not 'clearly inconsistent' with, the reviewer's assessment." Wall, 2019 WL 2723887, at *4 (internal citation and quotation marks omitted); see also Meldrem, 2017 WL 2257337, at *2; Ferland v. Astrue, No. 11-cv-123, 2011 WL 5199989, at *1 (D.N.H. Oct. 31, 2011) (McAuliffe, J.).

Here, the ALJ understood Fairley's May 2014 opinion was not based on a review of Berthiaume's full medical record, given the passage of time. Nonetheless, he still relied on Fairley's opinion because he determined the "additional treatment notes . . . admitted to the record" up through June 2017 did not materially affect Fairley's otherwise reliable medical opinion.[17] Unlike other medical expert opinions in the record, the ALJ gave Fairley's opinion great weight because Fairley "reviewed the available medical evidence of record and provided support for his opinion with reference to the treatment notes and clinical examinations.[18] The ALJ found that "although additional treatment notes ha[d] been admitted to the record since [Fairley] performed his review, these additional treatment notes d[id] not reflect any meaningful change or deterioration in [Berthiaume's] presentation . . . ."[19] Additionally, he found that Fairley's "opinion remain[ed] consistent with the evidence of record in its entirety."[20] As such, the ALJ committed no error by relying on Fairley's assessment. See Ferland, 2011 WL 5199989, at *4 (finding that an ALJ was entitled to rely on a non-examining physician's assessment where he provided medical-based explanations for his conclusions about limitations).

Berthiaume argues, without reference to Fairley's findings or any other medical evidence, that "the record after . . . Fairley reviewed the file[] cannot be considered consistent with the file prior to his opinion" because she "sought significant treatment for her symptoms" after Fairley's opinion issued.[21] But in doing so, Berthiaume never

---

[17] See Admin. R. at 36.

[18] Id.

[19] Admin. R. at 36.

[20] Id.

[21] Berthiaume Mot. to Reverse Mem. (doc. no. 9-1) at 5.

explains how her subsequent medical visits evidence greater limitations than those identified by Fairley. Nor does she spell out how the treatment notes from her visits arguably conflict with the findings in Fairley's otherwise consistent medical assessment. Simply put, she has not sufficiently developed her argument that evidence postdating Fairley's opinion materially changed the record on which Fairley's opinion was based.

Such a "passing allusion" to an argument limits this court's ability to meaningfully address the disputed issue. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir.1990); SignalQuest, Inc. v. Chou, No. 11-cv-392-JL, 2016 WL 738209, at *5 (D.N.H. Feb. 23, 2016). Even during appellate review of a Social Security determination, the district courts cannot be expected to "do [plaintiff's] counsel's work," discern the particulars of Berthiaume's argument regarding inconsistencies in the record, and "put flesh on its bones" by culling the administrative record. Zannino, 895 F.2d at 17. As such, the court need not consider Berthiaume perfunctory, record-based argument. See Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d 252, 260 (1st Cir. 1999).

Nevertheless, even if the court took Berthiaume's argument in the best light, the argument would still fail because the medical reports postdating Fairley's 2014 opinion were not "clearly inconsistent" with Fairley's functional assessment. See Wall, 2019 WL 2723887, at *4. In assessing Berthiaume's RFC, the ALJ reviewed these postdated medical reports and found that the they "continue[d] to not provide evidence of significant deficits that would require limitation in excess of those" identified by Fairley (and ultimately incorporated into the ALJ's RFC).[22] For example, although Berthiaume in 2015 regularly "presented with a decrease in core stability and an antalgic gait pattern," the ALJ observed that "[l]ater neurological examination . . . showed 5/5 strength

---

[22] Admin. R. at 34.

9

in the upper and lower extremities bilaterally," undercutting Berthiaume's claim.[23] Additionally, "even though [Berthiaume] described her pain as an 8 on the 1-20 pain scale," the ALJ noted that "she presented in no acute distress" and had "not [been] prescribed any narcotic pain medication," suggesting to the ALJ that "she does not present with significant pain that her providers feel would be best addressed with intensive pain medication."[24]

In Ferland, Judge McAuliffe rejected a similar challenge to a denial of benefits where a non-examining physician "did not review more recent medical records" generated after he issued his medical opinion. 2011 WL 5199989, at *4. Like Fairley, the non-examining physician "relied on the most recent (at the time) medical report from the claimant's treating physician[(s)]" before opining that the plaintiff could perform light work. [25] Id. The ALJ then confirmed that the challenged assessment was "consistent" with the "the recent medical reports that were not available to" the non-examining physician by addressing them in his decision and giving less weight to portions that were purportedly inconsistent with the other record evidence. Id. (quotation marks omitted). Although the plaintiff contended that the ALJ gave too little weight to portions of the recent medical records, Judge McAuliffe found that the "ALJ was entitled to resolve these evidentiary conflicts," and that "[t]he ALJ's resolution of these evidentiary conflicts [was] entitled to deference," as they were supported by substantial evidence. Id. at *7.

---

[23] Id.

[24] Id.

[25] The plaintiff did not argue that the non-examining consultant "had an incomplete record before him at the time of his" purportedly outdated assessment. Id. Berthiaume similarly does not dispute that Fairley reviewed the available medical evidence of record or that the evidence Fairley considered was sufficient to support his evaluation at the time.

The court thus held that the ALJ's RFC, patterned on the non-examining physician's allegedly outdated assessment, was also supported by substantial evidence. Id. As such, it affirmed the ALJ's final decision. Id.; see also Wall, 2019 WL 2723887, at *4 (finding that the plaintiff's "subsequent reports" of pain were not inconsistent with symptoms documented in the "extensive evidence" available at the time of the non-examining consultant's assessment).

Berthiaume, in an attempt to distinguish her case, argues that in Ferland there "were no new limitations reported in the new records."[26] But, as discussed above, Berthiaume never specifies any new limitations in her motion. Nor does she explain how any of the symptoms for which she sought treatment affected her ability to perform during an eight-hour workday (beyond the functional limitations already set forth in the RFC). For similar reasons, her new diagnoses of sciatica and fibromyalgia do not carry her burden either. As the Commissioner correctly notes, these diagnoses are "medical labels which carry no readily discernible message about the physical capacities of an individual suffering from the conditions they denote." Rosario-Class v. Sec'y of Health & Human Servs., No. 90-1144, 1990 WL 151315, at *2 (1st Cir. July 16, 1990). "A mere diagnosis of a condition says nothing about the severity of the condition," or put differently, whether Berthiaume's symptoms are in fact so severe as to make her totally disabled from working. See also White v. Astrue, No. 10-10021, 2011 WL 736805, at *6 (D. Mass. Feb. 23, 2011) (internal quotation marks omitted)).

Berthiaume's argument concerning the deference given to other outdated medical opinions compels no different result. She notes that the ALJ gave "little weight" to the opinions of two other non-examining, state agency physicians, Drs. Jonathan Jaffe, M.D.

---

[26] Berthiaume Mot. to Reverse Mem. at 5.

and Michael Schneider, PsyD, because "additional treatment notes had been admitted to the record" since they had issued their respective opinions in 2016.[27]  Unlike Fairley, however, Jaffe and Schneider "both opined that there was insufficient evidence to evaluate [Berthiaume's] function[ing]" because Berthiaume failed to furnish certain medical evidence necessary for them to fully assess her claim.[28]  The admission of additional treatment notes thus created a material change in the record from which those doctors' determined Berthiaume was "not disabled."[29]  Fairley, by comparison, made a functionality determination based on the medical reports available to him at the time of his assessment.  And Berthiaume does not dispute that the evidence Fairley considered was sufficient to support his evaluation at the time.[30]

The ALJ's RFC, patterned on Fairley's assessment of Berthiaume's functional limitations, is supported by substantial evidence in the record.  The court finds no error warranting reversal or remand.

---

[27] Berthiaume Mot. to Reverse Mem. at 6 (quoting Admin. R. at 36).

[28] Admin. R. at 35-36; id. at 190-91 ("Although there is some medical evidence to support your allegations there is insufficient evidence to fully assess your claim due to you not returning the necessary paperwork requested.").

[29] Id. at 191 ("As a result of your failure to cooperate we have made a determination of not disabled due to insufficient evidence." (emphasis added)).

[30] Berthiaume briefly argues that the ALJ also should have rejected the opinion of Laura Landerman, PhD, another state agency consultant, because her opinion issued in June 2014.  While the ALJ gave Landerman's opinion some weight, the ALJ "defer[red] to the more restrictive" mental RFC assessment of Jessica Stern, PhD.  Accordingly, Berthiaume has not articulated an actual error warranting remand.  And even if she had, the court deems her perfunctorily made argument to be insufficiently developed to warrant consideration.  See Zannino, 895 F.2d at 7.

### B. Appeals Council denial of review

Berthiaume also contends that the Appeals Council denial of her request to review constitutes an egregious error, thus warranting remand. Again, the court disagrees.

"An Appeals Council decision refusing review has all the hallmarks of a discretionary decision: the Appeals Council need not and often does not give reasons, and the regulations appear to provide the Appeals Council with a great deal of latitude in deciding which cases should be reviewed." Mills, 244 F.3d at 5-6 (citing 20 C.F.R. § 416.1470). The First Circuit Court of Appeals has explained that such "a discretionary decision may be reviewable to the extent that it rests on an explicit mistake of law or other egregious error." Id. For example, if "the Appeals Council considers new evidence but concludes that it would not provide a basis for changing the ALJ's decision," a federal court may permissibly review and affirm it, "as long as record evidence support[ed] the decision." Roberson, 2014 WL 243244, at *4; see also Shea v. Colvin, 2013 WL 5952992, at *10-11; Robbins v. Astrue, No. 09-cv-343, 2010 WL 3168306, at *3–4 (D.N.H. Aug. 9, 2010) (DiClerico, J.); Thibodeau, 2009 WL 903851, at *5 n.6. Conversely, if the Appeals Council denied review without a stated reason, such a denial would be "effectively unreviewable" by the federal courts.[31] Mills, 244 F.3d at 6. The former scenario occurred here.

Three weeks after the ALJ denied Berthiaume's application, Berthiaume's treating physician, Dr. Fry, completed a 6-page medical questionnaire detailing functional limitations attributable to her fibromyalgia symptoms.[32] Berthiaume submitted the

---

[31] "This s not a serious anomaly: there is reason enough to correct an articulated mistake even though one cannot plumb the thousands of simple "review denied" decisions that the Appeals Council must issue every year." Mills, 244 F.3d at 6.

[32] See Admin. R. at 8-14.

medical questionnaire to the Appeals Council to support her request for review, but the Council denied the request because the questionnaire did "not show a reasonable probability that it would change the [ALJ's] decision."[33]

Berthiaume acknowledges that the court typically "owe[s] such assessments great deference." Mills, 244 F.3d at 6. Still, she contends that "it is reasonable to conclude the [medical questionnaire] opinion would have resulted in a different determination" because it "shows evidence of [f]ibromyalgia that meets the criteria laid out in SSR 12-2p" and is "the only [medical] opinion issued within two years of the ALJ's decision."[34] The court is not convinced.

Fatal to her argument, Berthiaume never articulates how her new fibromyalgia diagnosis would have materially impacted the ALJ's ultimate determination. At the time the ALJ issued his opinion, the medical evidence of record already showed that Berthiaume "complained of widespread pain," had "positive tenderpoints," and had received a suggested diagnosis of fibromyalgia.[35] The ALJ declined to find that her fibromyalgia qualified as a medically determinable impairment under SSR 12-2p, not because he discounted these reports, but rather because Berthiaume's treatment notes did not provide necessary "clinical examinations or medical history."[36] As such, he "fully considered" Berthiaume's reports of pain in his assessment and his RFC determination that she could perform light work.[37]

---

[33] Id. at 1-2.

[34] Berthiaume Mot. to Reverse Mem. at 7-8.

[35] Admin. R. at 30.

[36] Id.

[37] Id.

Given this consideration, it is unclear how a finding that Berthiaume's fibromyalgia met the criteria in SSR 12-p would materially change the ALJ's findings on her physical work limitations. "'Some people may have such a severe case of fibromyalgia as to be totally disabled from working, but most do not[,] and the question is whether [the plaintiff] is one of the minority.'" Robinson v. Berryhill, No. 16-cv-347, 2017 WL 3602010, at *5 (D.N.H. Aug. 22, 2017) (McAuliffe, J.) (quoting Hawkins v. First Union Corp. Long–Term Disability Plan, 326 F.3d 914, 916 (7th Cir. 2003)). A diagnosis, by itself, conveys "no discernible" answer to this question. See Rosario-Class, 1990 WL 151315, at *2.

Additionally, the medical questionnaire itself offers questionable support for Berthiaume's position. As the Commissioner correctly observes, Fry primarily expressed her opinion by checking off or circling items on a pre-printed questionnaire. In doing so, she provided little "discussion or analysis" of her clinical findings, providing little assistance to the fact finder. See Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018). It is also unclear to what extent the information on the questionnaire reflects Berthiaume's self-reported limitations rather than an independent medical opinion resulting from more objective medical testing. For example, in describing the frequency, nature, and severity of Berthiaume's pain, Fry wrote "'All the time,' '7' most of the time" in quotations, suggesting she was merely reporting Berthiaume's answers on the questionnaire.[38] Elsewhere, Fry opines on Berthiaume's ability to sit, stand, and lift in a competitive work environment, but again, does so without any reference to objective medical testing by Fry or by another physician of record.[39]

---

[38] Admin. R. at 10.

[39] Id. at 12.

In denying Berthiaume's application for benefits, the ALJ discounted similarly conclusory or unsubstantiated testimony.  Of note, he gave Fry's initial medical opinion "no weight," despite her being a treating provider, because her statement, devoid of reference to actual medical testing, was "a conclusory opinion on an issue reserved to the Commissioner."[40]  Additionally, the ALJ gave less than full credit to Berthiaume's self-reports about her limitations.  For example, he found that while Berthiaume's "medically determinable impairments could reasonably be expected to cause [her] alleged symptoms, [her] statements concerning the intensity, persistence, and limiting effects of these symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record."[41]  "As another noted inconsistency," the ALJ observed that Berthiaume's daily life activities suggested she could "perform more daily tasks" than she herself would say.[42]  These observations "go[] a long way towards supporting the [Appeals Council's] determination" that the questionnaire did not show a reasonable probability that it would change the ALJ's decision.  See Purdy, 887 F.3d at 13.

To be clear, this court sees no reason to doubt that Berthiaume suffers from fibromyalgia and sciatica and has functional limitations as a result.  But in light of the questionnaire's substantiality and credibility shortcomings, and the substantial deference given to Appeal Council assessments, she has failed to persuade the court that the questionnaire, if reviewed by the ALJ, would have a reasonable probability of changing the ALJ's denial of benefits.

---

[40] Admin. R. at 35.

[41] Id. at 33.

[42] Id. at 35.

### IV. Conclusion

In sum, none of the determinations made by the ALJ or the Appeals Council warrant reversal or remand of the ALJ's final decision. The court therefore denies Berthiaume's motion to reverse[43] and grants the Commissioner's motion to affirm.[44] The clerk shall enter judgment and close the case.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated: April 22, 2020

cc: Daniel W. McKenna, Esq.
Hugh Dun Rappaport, Esq.

---

[43] Doc. no. 9.

[44] Doc. no. 12.